UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN EILEEN BLASL,<br><br>            Plaintiff,<br><br>     v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>            Defendant. | Case No. 1:22-cv-01374-BAM<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 10, 12) |

**INTRODUCTION**

Plaintiff Karen Eileen Blasl ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. (Docs. 10, 12-13.)[2]

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. 8.)

1

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based upon proper legal standards. Accordingly, this Court reverses the agency's determination to deny benefits and remands the matter for further proceedings consistent with this order.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed a Title II application for disability insurance benefits in May 2020 and alleged that she became disabled on July 15, 2016. AR 181-189. Plaintiff's application was denied initially and on reconsideration. AR 65-93. Plaintiff requested a hearing before an ALJ and ALJ Brian Steger held a hearing on September 15, 2021. AR 35-64. ALJ Steger issued an order denying benefits on the basis that Plaintiff was not disabled on September 23, 2021. AR 12-34. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This appeal followed.

### September 15, 2021 Hearing Testimony

The ALJ held a telephonic hearing on September 15, 2021. AR 35-64. Plaintiff appeared with her attorney, Zachery Ishikawa. *Id.* Sugi Komarov, an impartial vocational expert, also appeared and testified. AR 54-62. The ALJ began by admitting exhibits lA through 5F into the record. AR 40.

Plaintiff's attorney, Mr. Ishikawa, opened by noting that approximately one month before the alleged onset date, Plaintiff suffered a severe stroke and has been dealing with seizures since. AR 41. Mr. Ishikawa highlighted a CT scan of Plaintiff's cervical spine which revealed extensive degenerative changes and complications from Plaintiff's stroke that affected her hearing and vision. *Id.* Mr. Ishikawa further noted that the ALJ could apply the recency of the dates Plaintiff dealt with carpal tunnel disorders to the date last insured and had still been dealing with pain, mobility, and strength issues related to those disorders. *Id.*

In response to questions from the ALJ, Plaintiff said that she fell and hit her head when she had a seizure in 2016. AR 42. Mr. Ishikawa directed the ALJ to Exhibit 1F which listed the date as August 5, 2016. *Id.* Plaintiff testified that she had been having problems with her hands "for a long time" and that she had a surgery for her joints and thumbs in which the surgeons took out a bone and

2

replaced it with a piece of a nerve. AR 43. Plaintiff reiterated that her hands had bothered her "for a long time." AR 44. Mr. Ishikawa and the ALJ discussed further and referred to Exhibit 2F which showed results from Plaintiff's hands done at that time. AR 44-45.

The ALJ and Mr. Ishikawa then discussed that only Plaintiff's position as an office assistant and speech educator and another position would be at SGA levels. AR 45. The ALJ stated that "it looks like she was an office assistant for a school district for a number of years up until 2012 when she transitioned into other work" and asked if the VE had further questions for Plaintiff regarding the work. AR 46. The VE testified that she did not have further questions for Plaintiff. *Id.*

In response to examination by her attorney, Plaintiff testified that she could not do a lot of things with her hands during that time, including open a door or lift anything heavy. *Id.* She testified that they were both swollen and she had a bone spur on her left hand as well as the joint. *Id.* She testified that after her surgeries on her right elbow, right hand, right wrist, and left thumb they were somewhat improved but the strength and condition was not what it used to be. AR 46-47. Plaintiff stated that she could not open doors, open bottles, or open latches regularly. AR 47. She testified that she does not use the computer anymore because she cannot "see everything" there and can only see on her phone when the images are enlarged. *Id.* Plaintiff testified that she does not write anymore and that when she tried to write things down "it's horrible." *Id.*

In terms of her neck, Plaintiff testified that the neurologist was trying to figure out issues regarding balance and she was waiting on a third report regarding the spinal cord and vertebrae potentially being pinched against the spine. AR 47-48. Plaintiff testified that her neck causes her to fall two to three times per week. AR 48. She would try to use a cane which generally helped, but fell in the shower. *Id.* She testified that she was unsure what was causing her balance to be so bad, but an emergency room doctor got her a placard because she fell so often. *Id.* She testified that she hit her left knee last time she fell, but "it's okay." *Id.*

Plaintiff testified that she did not know how she hit her head, but according to her daughter it was due to having a seizure. AR 48-49. She stated that "we were unpacking the car and after that I fell and hit my head, and all I remember is saying I'm so sorry, and that was it I don't remember anything after that." *Id*. She testified that she still deals with seizures and has them approximately

once per month but does not call the doctor because she does not want to lose her driver's license.  AR 49.  She said that she would wake up on the floor somewhere following the seizure and would have a resulting "major headache."  *Id.*  She testified that the headache would typically go away overnight.  *Id.*  Plaintiff testified that she had her phone on speaker because she could not have the phone up to her ear and participate in the hearing simultaneously.  AR 49-50.  She testified that she looked into a hearing aid but could not afford it and went to Kaiser.  AR 50.  She testified that she could hear tones and noise but could not understand it in her left ear.  *Id.*

Plaintiff testified that she could not go back to her last job as an office helper or office assistant because she could not hear on the phone.  *Id.*  She also noted that she could not do her speech pathology work as she would be working with kids in their homes and could not hear them.  *Id.*  She further testified that her balance is bad, she cannot lift anything heavy, her neck is sore, and she does not have full mobility.  AR 50-51.  She testified that she was informed by LensCrafters that she had cataracts, but Kaiser told her that the cataracts were not bad enough to have surgery.  AR 51.  Plaintiff testified that she needed to shut her left eye "because the sun and everything else [she] can't see."  *Id.*  The ALJ then asked if Plaintiff understood that she had misrepresented her condition to her provider and potentially endangered others by driving with one eye closed.  AR 51.  Plaintiff testified that her provider said that Plaintiff can usually tell when a seizure is coming on and can just stop.  AR 51-52.

The ALJ then asked how much time Plaintiff spent on speech therapy in her past position.  AR 53.  Plaintiff testified that she worked four hours a day as a speech therapist prior to her divorce.  *Id.*  After her divorce, she went into the secretarial pool.  *Id.*  Following that role, she became an instructional aide at a Clovis school, where she would work with children at their homes.  *Id.*  Plaintiff clarified that from 2006 through 2012, she was doing secretarial work.  *Id.*  Plaintiff added that her body was not functioning as well as it had in the past, but she did not feel that she was old enough to have those problems.  AR 54.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  AR 54-62.  VE Sugi Komarov first affirmed that her resume was accurate, she had not discussed the merits of the case previously, she could provide an impartial and neutral opinion, and that she needed to advise the court

of any opinions provided that conflict with or address issues outside the bounds of the Dictionary of Occupational Titles. AR 54-55. Plaintiff's attorney had no objections to the VE. AR 55.

In response to the ALJ's question regarding Plaintiff's "job where she worked as a secretary for the school district," VE summarized Plaintiff's past work as "Office helper," "DOT Code is 239.567-010, light with SVP of 2, performed at light according to the E exhibits." AR 55-56. The ALJ asked Plaintiff's counsel if he had any objections to that classification of Plaintiff's past work, and Plaintiff's counsel responded that he did not. AR 56. In response to the ALJ's questions, the VE testified that in her professional opinion, employers permitted maximum ten percent off-task time and one day per month for absenteeism. *Id.*

The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to consider a person with the same education and work history as Plaintiff who could perform all the functions of light exertional work but was: incapable of climbing ladders, ropes, or scaffolds; was incapable of crawling; was capable of occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, and crouching; capable of frequent rotation, flexion, and/or extension of the neck in all directions; was incapable of reaching overhead with the dominant right upper extremity but was otherwise capable of frequent reaching in all directions with the bilateral upper extremity; capable of frequently handling, fingering, feeling, and grasping with the bilateral hand; capable of no more than occasional exposure to vibrations; incapable of working in an environment with bright lights such as direct sunlight, stage lighting, stadium lighting, flashing flights, or strobe lighting; was capable of working in an environment with no more than a moderate noise level as defined by the characteristic occupations; was able to perform work that does not require driving as part of work duties or require any work-related exposure to hazards such as unprotected heights and unguarded moving machinery; was capable of traveling to and from a single workplace but was otherwise incapable of traveling for work; was able to understand, remember, and carry out simple instructions and tasks; was able to work at a consistent pace throughout the workday at simple tasks, but not at a production rate pace where each task must be completed within a strict time deadline or within high quota demands; was able to make occasional simple work-related decisions in a job that involves only occasional change in a routine work setting; was able to sustain concentration and persist at simple

5

1  tasks as described up to two hours at a time with normal breaks during an eight-hour workday; and
2  was capable of occasional interaction with the general public, coworkers, and supervisors.  AR 56-58.
3  The VE testified that the hypothetical individual would be able to perform Plaintiff's past work as an
4  office helper as generally performed and as actually performed.  AR 58.  The VE additionally testified
5  that there would be other representative occupations in the national economy that the hypothetical
6  individual could perform, including: Marker (DOT Code 209.587-034, light, SVP 2, approximately
7  38,000 jobs nationally); Mail Clerk (DOT Code 209.687-026, light, SVP 2, approximately 91,000 jobs
8  nationally); and Small Products Assembler (DOT Code 706.684-022, light, SVP 2, approximately
9  17,000 jobs nationally).  AR 58-59.

10  Plaintiff's attorney then examined the VE and asked the VE to change the hypothetical
11  individual's frequent handling and bilateral fingering to occasional handling and bilateral fingering.
12  AR 59.  The VE testified that such an individual could not return to previous work or the jobs listed.
13  *Id.*  Plaintiff's attorney then asked the VE to consider if the hypothetical individual had a limitation of
14  standing and walking four hours out of an eight-hour workday.  *Id.*  The VE testified that the previous
15  relevant work would be available.  *Id.*  The ALJ then asked whether it was the VE's professional
16  opinion that the light jobs identified would allow for four hours of standing and/or walking combined
17  with four hours of sitting.  AR 60.  The VE testified that these jobs could be performed and that light
18  jobs require up to six hours of walking and/or standing, so there are tasks one would need to do while
19  seated.  *Id.*  Plaintiff's attorney then asked the VE to change the hypothetical individual's frequent
20  reaching in all directions to occasional reaching in all directions with the right upper dominant
21  extremity.  *Id.*  The VE testified that the jobs suggested previously would not be available.  *Id.*  The
22  VE then testified that she based her opinion on her vocational field experience, education, and training
23  for items not specifically addressed or distinguished by the Dictionary of Occupational Titles,
24  including: off-task time; absenteeism; climbing of ladders, ropes, scaffolds, ramps, and stairs;
25  movement of the neck reaching in one direction versus in all directions; use of one extremity versus
26  both extremities; exposure to bright or flashing lights; driving as part of work duties; traveling for
27  work; work based on adherence to strict time deadlines or quota demands.  AR 61.  Plaintiff's attorney
28  then asked the VE if there was any overhead reaching involved in the jobs listed.  *Id.*  The VE testified

6

that there was "possibly" some minimal overhead reaching involved in the mail clerk position. AR 61-62.

The ALJ then asked about the hypothetical individual's extremity limitation, and the ALJ clarified that hypothetical individual was incapable of reaching overhead with the dominant right upper extremity but was otherwise capable of frequently reaching in all directions with the bilateral upper extremity. AR 62. The VE provided another position to replace the mail clerk position: electrical accessories assembler (DOT Code 729.687-010, light, SVP 2, approximately 50,000 jobs nationally). *Id.* The VE testified that this occupation did not expose an individual to hazards and the individual would not be exposed to electrical current. *Id.* Plaintiff's attorney closed by noting that occasional hand manipulative limitations bilaterally are shown through a March 12, 2018 x-ray of Plaintiff's left hand which revealed severe degenerative changes as well as through Plaintiff's ENG nerve conduction study revealing significant right carpal tunnel syndrome and severe median neuropathy across the right wrist. AR 63.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-34. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of July 15, 2016, through her date last insured of September 30, 2019. AR 17. The ALJ identified the following severe impairments: degenerative changes to the cervical spine; epilepsy; left first carpometacarpal joint osteoarthritis; depression; anxiety; degenerative changes to the right shoulder; degenerative changes to the right elbow; bilateral carpal tunnel syndrome; right cubital tunnel syndrome; and right hand degenerative joint disease. *Id.* The ALJ additionally evaluated and discussed other impairments that did not constitute severe medically determinable impairments, including left side hearing loss and visual limitations, but found that the conditions did not have more than a minimal effect on Plaintiff's abilities to perform basic work activities. AR 18. The ALJ

determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 18-24.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light exertional work with limitations that: Plaintiff was incapable of climbing ladders, ropes, and scaffolds and is incapable of crawling; Plaintiff was capable of occasionally climbing ramps and stairs and occasionally balancing, stooping, kneeling, and crouching; Plaintiff was capable of frequent rotation, flexion, and/or extension of the neck in all directions; Plaintiff was incapable of reaching overhead with the dominant right upper extremity but was otherwise capable of frequently reaching in all directions with the bilateral upper extremities; Plaintiff was capable of frequently handling, fingering, feeling, and grasping with the bilateral hands; Plaintiff was capable of no more than occasional exposure to vibrations; Plaintiff was incapable of working in an environment with bright lights (such as direct sunlight, stage lighting, or stadium lighting) and/or flashing lights (such as strobe lighting); Plaintiff was capable of working in an environment with no more than a moderate noise level as defined by the Selected Characteristics of Occupations; Plaintiff was able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; Plaintiff was capable of traveling to and from a single workplace but was otherwise incapable of traveling for work; Plaintiff was able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline or within high quota demands; Plaintiff was able to make occasional, simple work-related decisions in a job that involves only occasional changes in a routine work setting; Plaintiff was able to sustain concentration and persist at simple tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday; and Plaintiff was capable of occasional interaction with the general public, co-workers, and supervisors. AR 24-29.

With this RFC, and considering Plaintiff's age, education, and work experience, the ALJ found that Plaintiff was able to perform past relevant work as an Office Helper (DOT code 239.567-010, SVP 2, unskilled work, light exertional level). AR 29.

The ALJ further noted that to determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational base," the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and the VE testified that there would be other representative occupations in the national economy that the hypothetical individual could perform, including: Marker (DOT Code 209.587-034, light, unskilled, SVP 2, approximately 38,000 jobs nationally); Electronic Accessories Assembler (DOT Code 729.687-010, light, unskilled, SVP 2, with approximately 50,000 jobs nationally); and Small Products Assembler (DOT Code 706.684-022, light, SVP 2, approximately 17,000 jobs nationally). AR 30. Based upon the VE's testimony, the ALJ concluded that until Plaintiff "turned 55 years old, considering the claimant's age, education, work experience, and residual functional capacity," Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." *Id*. The ALJ stated that a "finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule." *Id*. The ALJ therefore concluded that Plaintiff had not been disabled at any time from July 15, 2016, the alleged onset date, through September 30, 2019, the date last insured. AR 31.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

### DISCUSSION[3]

Plaintiff contends that the ALJ failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints regarding Plaintiff's upper extremities dysfunction. (Doc. 10 at 7-12); (Doc. 13 at 2-4.) Plaintiff further contends that the ALJ erred by misclassifying Plaintiff's past relevant work. (Doc. 10 at 12-16); (Doc. 13 at 4-5.)

**A. Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints regarding her bilateral upper extremity dysfunction that made it difficult for Plaintiff to use her hands and arms. (Doc. 10 at 7-12); (Doc. 13 at 2-4.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison*, 759 F.3d at 1014; *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

at 1014.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  AR 25.  However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  *Id.*   The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

In assessing Plaintiff's statements and subjective complaints, the ALJ noted that in "terms of objective medical evidence, the medical record supports the claimant's assertion her impairments limit her ability to work. The medical evidence does not support the claimant's contention her impairments prevent her from working at all."  AR 26.  The ALJ then discussed the medical evidence related to the impairments Plaintiff alleged, including epilepsy, osteoarthritis, cervical spine degenerative changes, depression, anxiety, right shoulder and elbow degenerative changes, carpal tunnel and cubital tunnel syndrome, and right hand degenerative joint disease.  AR 26-28.  In assessing Plaintiff's upper extremities impairments, the ALJ found:

> Regarding her neck and right elbow pain, a cervical spine magnetic resonance imaging (MRI) found disc bulge and mild canal stenosis in August 2016. (Exhibit 1F at 65). A March 2019 cervical spine computerized tomography (CT) found extensive degenerative changes with prominent facet arthropathy, moderate to severe disc space narrowing, and multilevel moderate to severe neural foraminal narrowing. (Exhibit 2F at 68). In April 2019, a right elbow X-ray found mild degenerative changes and an old fracture deformity of the right radial head. (Exhibit 2F at 316). On examination, she had some right elbow swelling. (Exhibit 2F at 60). She reported right elbow stiffness in May 2019, but continued to have almost full range of motion. (Exhibit 2F at 56-57).
>
> Considering her right shoulder pain, the claimant had normal strength in upper and lower right extremities in May 2018. (Exhibit 2F at 102). In March 2019, a right shoulder X-ray found a right humeral neck fracture. (Exhibit 2F at 71). She attended physical therapy due to her right humerus fracture in May 2019. (Exhibit 2F at 53). In September 2019, a right

11

> shoulder X-ray found mildly displaced and angulated fracture at the neck of the humerus and a right shoulder MRI found a low grade partial thickness articular surface tear, a mild subscapularis tendinosis, mild tendinosis suggestive of adhesive capsulitis, and moderate acromioclavicular arthrosis. (Exhibit 2F at 292). A September 2019 examination noted normal muscle strength in all extremities. (Exhibit 2F at 42).
>
> Turning to her hand pain, carpal tunnel syndrome, and cubital tunnel syndrome, in March 2018, a left hand X-ray found moderate to severe degenerative changes to the first carpometacarpal and STT joints. (Exhibit 2F at 105). She was diagnosed with left pan-trapezial degenerative joint disease and her physician noted limited range of motion of her left thumb. (Exhibit 2F at 105). The claimant continued to have left thumb pain in June 2018 with no improvement following a steroid injection and her physician noted left first carpometacarpal joint osteoarthritis. (Exhibit 2F at 85). In August 2018, the claimant reported right wrist pain after tripping over her dog and again in September 2018 after punching a wall, but right hand X-rays was unremarkable. (Exhibit 2F at 74-75, 77). The claimant denied having hand or finger problems in May 2019. (Exhibit 2F at 56). In February 2020, a right hand X-ray found degenerative joint disease involving the radial aspect of the wrist including the base of the first carpometacarpal. (Exhibit 2F at 279). The claimant was diagnosed with bilateral carpal tunnel syndrome and right cubital tunnel syndrome in February 2020. (Exhibit 2F at 18).

AR 26-27.  The ALJ later wrote:

> In sum, the record does not provide a reasonable basis for finding a greater level of limitations than that set forth in the residual functional capacity. Consideration of the record as a whole, including the claimant's reported activities of daily living, treatment modalities, the longitudinal medical record, and the opinion evidence shows the claimant's allegations of disabling symptoms and limitations are not entirely consistent with and supported by the medical evidence and other evidence in the record. Despite her impairments, the claimant retained the ability to meet the requirements of work within the parameters of the above-noted residual functional capacity.

AR 28-29.

The principal reason provided by the ALJ to discount Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms was that the "medical evidence does not support the claimant's contention her impairments prevent her from working at all."  AR 26.  Although it is a factor that the ALJ can consider, lack of supporting medical evidence cannot form the sole basis for

discounting pain and symptom testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); see also *Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (holding ALJ may not disregard claimant's testimony "solely because it is not substantiated by objective medical evidence"); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence...."). *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of the [symptoms]."). In discussing Plaintiff's alleged impairments and the RFC, the ALJ found that the "medical evidence does not support the claimant's contention her impairments prevent her from working at all" and then summarized the treatment and medical records. AR 26-27. However in discussing Plaintiff's alleged upper extremities impairments, the ALJ does not cite other reasons for discounting Plaintiff's subjective complaints beyond a brief statement that he considered "the record as a whole, including the claimant's reported activities of daily living, treatment modalities, the longitudinal medical record, and the opinion evidence." AR 28-29. Because the ALJ appears to have discounted Plaintiff's upper extremities symptoms testimony solely based upon the medical record, the ALJ did not provide clear and convincing reasons for discounting Plaintiff's symptoms testimony.

The brief statement that the ALJ considered "the record as a whole, including the claimant's reported activities of daily living, treatment modalities, the longitudinal medical record, and the opinion evidence" without further discussing or explaining evidence beyond the medical record is also insufficient to demonstrate that the ALJ considered evidence beyond the medical record. The Ninth Circuit has held that an "ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). In *Brown-Hunter*, the Ninth Circuit further clarified that an ALJ errs "by making only a single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, without identifying sufficiently specific reasons for rejecting the testimony,

supported by evidence in the case record." *Id.* at 493; *see also Laborin v. Berryhill*, 867 F.3d 1151, 1152, 1154-55 (9th Cir. 2017). There, the ALJ "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged.' " *Id*. The Ninth Circuit found the ALJ's analysis erroneous and concluded that any such error was not harmless as it could not "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible." *Id*. at 494. The failure to identify which testimony the ALJ found not credible and which evidence contradicted that testimony fell short of meeting the ALJ's responsibility to provide the reason or reasons upon which her adverse determination was based. *Id*. at 494-95 (citation omitted).

Similarly, the ALJ here summarized the medical evidence supporting the RFC determination, and then stated that he considered "the record as a whole, including the claimant's reported activities of daily living, treatment modalities, the longitudinal medical record, and the opinion evidence." AR 23-28; 28-29. As in *Brown-Hunter*, this does not allow the Court to discern the agency's path because the ALJ did not provide reasons beyond a summary of the medical evidence as to why he discounted Plaintiff's testimony. While the ALJ states that he relied upon Plaintiff's reported activities of daily living, treatment modalities, and the opinion evidence, the ALJ's discussion of Plaintiff's upper extremities impairments does not explain how the ALJ considered those other forms of evidence. AR 26-27. Because the ALJ did not precisely identify which evidence contradicted Plaintiff's alleged upper extremities impairments, the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

Defendant argues that the ALJ relied on administrative medical findings in determining Plaintiff's RFC and limitations. (Doc. 12 at 11-12.) Defendant contends that the ALJ relied upon the assessments of state agency consultants Dr. Garcia and Dr. Kiger with regards to manipulative function, and notes that the ALJ's RFC assessment added greater reaching restrictions than those found by Dr. Garcia and Dr. Kiger. (*Id.* at 11.) However, in reviewing the ALJ's discussion of the Plaintiff's upper extremities impairments in the RFC, the ALJ does not cite these medical consultants' findings but instead relies on medical evidence from Exhibits 1F and 2F. AR 26-27. The ALJ's

discussion of the medical consultants' findings is instead to determine the persuasiveness of the consultants' findings rather than to directly use their findings as a basis for discounting Plaintiffs' symptoms testimony. *See* AR 28. Accordingly, Defendant's argument that the ALJ's discounting of Plaintiff's symptoms was based upon more than the lack of supporting medical evidence is incorrect.

Defendant further argues that the ALJ relied on Plaintiff's daily activities to find Plaintiff was not as limited as alleged. (Doc. 12 at 12-13.) Defendant notes that the ALJ summarized Plaintiff's reported activities in the listings analysis and then concluded in the RFC section that Plaintiff's activities were inconsistent with Plaintiff's alleged degree of limitation. (*Id.* at 12.) Defendant is correct that the ALJ summarizes Plaintiff's daily activities in the listings analysis. AR 23. However, the ALJ summarized and utilized Plaintiff's daily activities to discuss Plaintiff's limitations related to understanding, remembering or applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself. *Id.* The ALJ did not discuss Plaintiff's daily activities in discounting Plaintiff's upper extremities symptoms testimony. AR 23-29. The only discussion of Plaintiff's daily activities in the ALJ's analysis of Plaintiff's symptoms is the brief statement that consideration "of the record as a whole, including the claimant's reported activities of daily living… shows the claimant's allegations of disabling symptoms and limitations are not entirely consistent with and supported by the medical evidence and other evidence in the record." AR 28. But this recitation does not explain how Plaintiff's activities of daily living conflict with Plaintiff's allegations of disabling upper extremities symptoms and limitations. The ALJ did not utilize Plaintiff's daily activities when discounting pain and symptom testimony. Accordingly, Defendant's argument that the ALJ's discounting of Plaintiff's symptoms was based upon more than the lack of supporting medical evidence is incorrect.

Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's subjective complaints.

### B. Remedy

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. See *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would

serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted). On remand, the ALJ should address whether Plaintiff's symptoms testimony is adequately supported or whether there are specific, clear and convincing reasons for rejecting Plaintiff's symptoms testimony.

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments concerning whether the ALJ misclassified Plaintiff's past relevant work. See *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

///
///
///
///
///
///
///
///

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision was not supported by substantial evidence in the record as a whole and was not based on proper legal standards. For the reasons stated above, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. 10) is GRANTED;
2. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is GRANTED and the agency's determination to deny benefits is REVERSED; and
3. The Clerk of this Court be directed to enter judgment in favor of Plaintiff Karen Eileen Blasl and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __February 12, 2024__        /s/ *Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE